UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL ASSOCIATION OF CONVENIENCE STORES, NEW YORK ASSOCIATION OF CONVENIENCE STORES, FOOD MARKETING INSTITUTE, RESTAURANT LAW CENTER, <br><br> Plaintiffs, <br><br> —*against*— <br><br> NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK CITY BOARD OF HEALTH, DR. MARY TRAVIS BASSETT, in her official capacity as Commissioner of the New York City Department of Health and Mental Hygiene, NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, LORELEI SALAS, in her official capacity as Commissioner of the New York City Department of Consumer Affairs, <br><br> Defendants. | 17 Civ. 5324 |

## COMPLAINT

Plaintiffs National Association of Convenience Stores, the New York Association of Convenience Stores, the Food Marketing Institute, and the Restaurant Law Center (collectively "Plaintiffs") respectfully allege as follows:

### INTRODUCTION

1. This action challenges, on federal preemption grounds, enforcement of a New York City regulation, referred to as Regulation 81.50, requiring that calorie and related nutritional information be posted on menus boards and menus in restaurants, convenience stores, supermarkets and similar businesses.

2. New York City has announced that it will begin fining food service establishments on August 21, 2017 for failing to comply with Regulation 81.50. However, federal law prohibits any state or locality from imposing any food labeling regulation "that is not identical to" corresponding labeling requirements established by Congress and the U.S. Food and Drug Administration ("FDA"). 21 U.S.C. § 343-1(a)(4).

3. Regulation 81.50 is not identical to the corresponding FDA regulations because Regulation 81.50 is effective immediately, with fines beginning next month, while the FDA has made a considered decision not to require compliance with federal regulations until May 2018. Extension of Compliance Date, 82 Fed. Reg. 20,825, 20,827 (May 4, 2017). For businesses subject to the federal regulation (*i.e.*, chains with more than 20 stores operating under the same name), the net effect of New York City's premature implementation date is that *the entirety* of Regulation 81.50 is "not identical to" the federal standard and is therefore preempted.

4. The City's premature implementation of its menu labeling requirements violates federal law and is preempted. Plaintiffs, a group of trade associations representing grocers, convenience stores, and other food retailers injured by New York's unlawful implementation of its menu labeling regulations, seek preliminary and permanent injunctive relief to prevent New York City from enforcing its regulation as to businesses subject to the federal standard, at least until such time as FDA requires compliance with the federal standard.

## JURISDICTION AND VENUE

5. This action seeks an injunction and declaratory relief that New York City's restaurant food labeling regulations, 24 N.Y. City Rules & Reg. § 81.50(c) (2017), are preempted by federal law under the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2. Jurisdiction lies in this Court under 28 U.S.C. § 1331. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.15 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such

regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail . . . presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 145 (2d Cir. 2016) ("[T]he Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law.").

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(3) because the defendants reside within the State of New York and at least one of them resides within this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### The Parties

7. Plaintiffs are a group of trade associations representing grocers, convenience stores, restaurants, and other businesses directly affected by New York City's premature implementation of its menu labeling requirements. Plaintiff associations are made up of individual businesses and chains, including businesses located in New York City and subject to both the New York City and federal menu labeling requirements because they are part of a group of 20 or more stores (with at least one location in New York City) selling prepared food items under a common business name. The associational plaintiffs sue the City Defendants on behalf of their affected members.

8. The National Association of Convenience Stores ("NACS"), headquartered in Alexandria, Virginia, is an international trade association that represents both the convenience and fuel retailing industries, with more than 2,200 retail and 1,800 supplier company members. The U.S. convenience store industry has more than 154,000 stores across the United States and

had nearly $550 billion in sales in 2016. About 63 percent of the stores in the industry are owned by single-store operators (though many are still covered by the federal and New York City regulations that are the subject of this case because they are franchisees or contract with a refining company to use its brand name). At the same time, many NACS members are national food service establishments that also would be affected by the menu labeling regulations at issue in this case. NACS members have locations that operate within New York City under brands such as Speedway and 7-Eleven, as well as convenience stores operating as BP, Mobil, and Sunoco gas stations.

9. New York Association of Convenience Stores ("NYACS") represents some 130 companies operating over 1,500 convenience stores in New York that sell food, beverages, motor fuel, and various other products. NYACS was founded, in part, to provide collective advocacy for its members. Its membership includes convenience stores directly affected both by the New York City and federal regulation, including stores with multiple New York City locations.

10. The U.S. members of the Food Marketing Institute "FMI" operate nearly 40,000 retail food stores and 25,000 pharmacies, employing more than 3.5 million workers in the United States and representing a combined annual sales volume of almost $770 billion. FMI membership covers the spectrum of diverse venues where food is sold, including single owner grocery stores, large multi-store supermarket chains and mixed retail stores. FMI represents members affected by New York City's premature implementation of its menu labeling regulation, including grocery and pharmacy chains such as Fairway Market and those ShopRite™ stores that are members of the Wakefern Food Corp. cooperative.

11. The Restaurant Law Center ("RLC") is a public policy organization affiliated with the National Restaurant Association ("NRA"), the largest foodservice trade association in

the world.  The NRA was created in 1919 and launched the RLC, its affiliate, in 2015 to provide courts with the industry's perspective on legal issues significantly impacting the restaurant industry.  NRA members have locations that operate within New York City, and would be subject to New York City Regulation 81.50, the menu labeling regulation, which covers food service establishments with 20 or more locations operating under a common nationwide name.  NRA represents about two thousand food service establishments covered by New York City Regulation 81.50, including corporate owned food service establishments as well as franchisees because of national aggregation with other franchisees and franchisor owned establishments.

12. The New York City Department of Health and Mental Hygiene (the "Department of Health") has "jurisdiction to regulate all matters affecting health in the city of New York." *See* New York City Charter § 556.

13. The New York City Board of Health (the "Board of Health") is a 10-person body responsible for adopting and updating the New York City Health Code.  *See id*. § 558.

14. Dr. Mary Travis Bassett is the Commissioner of the Department of Health, and is being sued only in that official capacity.

15. The Department of Health, the Board of Health and Dr. Bassett are collectively responsible for enforcing the New York City Health Code, including the menu labeling regulations at issue here.  *Id*. §§ 555, 556(a) 558(e).

16. The New York City Department of Consumer Affairs (the "Department of Consumer Affairs") may also enforce the requirements of Regulation 81.50, pursuant to Regulation 81.50(f).

17. Lorelei Salas is the Commissioner of the Department of Consumer Affairs, and is being sued only in that official capacity.

**Preemption Under The Nutrition Labeling and Education Act**

18. Understanding the current regulatory regime for food labeling requires a brief review of what has come before.

19. In 1990, Congress passed the Nutrition Labeling and Education Act, which mandated certain labeling on packaged food ("NLEA"). Pub. L. No. 101-535, 104 Stat. 2353 (1990). The statute established uniform federal requirements for nutritional labels on packaged food, as well as for certain health-related claims made about food products (such as "low sodium" or "high oat bran"). *See id.*; *see* H.R. Rep. No. 101-538 at 19 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 3336, 3349 (giving examples of health claims).

20. NLEA contained two pertinent preemption provisions.

21. First, the statute barred state and local governments from adopting "any requirement for nutrition labeling of food that is not identical" to the federal requirements. Pub. L. No. 101-535, § 6, 104 Stat. 2353, 2363 (1990) (then codified at 21 U.S.C. §§ 343-1(a) (1990)). Because NLEA did not, at this time, establish nutritional labeling requirements for food prepared on site, the statute's preemption provision exempted (and thus permitted) local regulation of food "served in restaurants or other establishments" for "immediate human consumption" and food prepared in a "retail establishment" that is "ready for human consumption." *Id.* §§ 2, 6 (then codified at 21 U.S.C. §§ 343 (q)(5)(A)(i), (ii), 343-1(a) (1990)).

22. The purpose of the NLEA's preemption provision was to ensure that "covered food would have a uniform nutrition label" dictated by federal law and that it would not be subjected to varying obligations on a state-by-state basis. *See* H.R. Rep. No. 101-538 at 7, 1990 U.S.C.C.A.N. at 3337. In adopting this provision, Congress recognized that the federal standards

- 6 -

might preempt local laws mandating more information to consumers, but decided that "the net benefits from national uniformity in these aspects of the food label outweigh the loss in consumer protection that may occur as a result." *See* Final Rule Regarding State Petitions, 58 Fed. Reg. 2,462 at 2,462 (Jan. 6, 1993) (FDA adoption of preemption rules) (codified at 21 C.F.R. Part 100); *see also* 136 Cong. Rec. 35,095 (1990) (statement of Rep. Madigan) (the "fairest way to expect the food industry to support a nutrition labeling bill" was to preempt "burdensome State laws that interfered with their ability to do business in all 50 States").

23. Second, to address the need for uniformity regarding health-related claims about food, NLEA barred states and localities from adopting any "requirement respecting any claim" that "characterizes the level of any nutrient" or "the relationship of any nutrient . . . to a disease or a health-related condition" that is "not identical" to the federal requirements.  Pub. L. No. 101-535, §§ 3, 6, 104 Stat. at 2357, 2363 (then codified at 21 U.S.C. §§ 343(r)(1), 343-1(a) (1990)).

24. Unlike the preemption provision for food labeling, this provision had no exception for restaurants or other similar food service establishments.  The FDA's implementing regulations confirmed that restaurants would be subject to the statute's requirements. *See* 21 C.F.R. § 101.13(q)(5) ("A nutrient content claim used on food that is served in restaurants . . . shall comply with the requirements of this section.").  Thus, for example, a restaurant could not describe its food as "low sodium" unless the food met federal standards for that description.  And any non-identical local regulation of such claims would be preempted.

25. Congress contemplated that the FDA would issue regulations "to implement" the broad requirements of NLEA through more specific regulations.  Pub. L. No. 101-535, § 2(b), 104 Stat. at 2356.  Pursuant to this authority, the FDA interpreted the phrase "not identical to" in both preemption provisions broadly to refer to local food labeling requirements that "[a]re not

imposed by or contained in the applicable [federal] provision (including any implementing regulation)" or that "[d]iffer from those specifically imposed by or contained in the applicable [federal] provision (including any implementing regulation)." 21 C.F.R. § 100.1(c)(4).

**New York Mandates Menu Labeling**

26. In December 2006, the Board of Health adopted the first version of Regulation 81.50, which at the time required restaurants and other food service establishments that made available calorie information to their customers by any means (via, for example, their internet sites or in printed brochures) to also include that information on menu boards and menus, so it would be "available at the time of ordering."

27. In September 2007, a federal judge in this District (Judge Holwell) ruled that Regulation 81.50 was preempted by NLEA. *New York State Restaurant Ass'n v. New York City Bd. of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007). The court found that, because Regulation 81.50 applied only to establishments that *voluntarily* chose to disclose calorie information, it fell outside the preemption provision governing state and local "*requirement[s]*" for food labeling (which allowed for local regulation) and was instead governed by the general preemption provision for health-related claims (which did not). *Id.* at 356-63. The court observed, however, that New York City would be "free to enact mandatory disclosure requirements" that would not be preempted. *Id*. at 363.

28. Acting on the court's suggestion, in January 2008, the Board of Health re-enacted Regulation 81.50, making menu labeling mandatory for "any establishment in the City of New York that is one of a group of 15 or more food service establishments doing business nationally under the same name and offering for sale substantially the same menu items."

29.     This updated regulation was challenged on First Amendment and other grounds, but was ultimately upheld as lawful. *See N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114 (2d Cir. 2009).

**The Patient Protection and Affordable Care Act**

30.     In 2010, President Obama signed into law the Patient Protection and Affordable Care Act ("ACA"). Pub. L. No. 111-148, 124 Stat 119 (2010). The ACA mandated, for the first time in federal law, that certain retail food establishments (*i.e.,* those with 20 locations operating under the same name and with standard menu items) include a "nutrient content disclosure" statement next to menu items that would include information about the calories and related nutrients in each menu item, among other requirements. 21 U.S.C. § 343(q)(5)(H)(i), (ii). The ACA provided that the FDA would by regulation "specify the format and manner of the nutrient content disclosure requirements." *Id.* § 343(q)(5)(H)(x)(II)(bb). The ACA did not specify when the menu labeling provisions would be effective, but instead left it to the FDA to "promulgate proposed regulations to carry out" the statute. *Id*. § 343(q)(5)(H)(x)(I).

31.     Because the ACA imposed new menu labeling requirements on restaurants and similar retail food establishments, the statute also made a corresponding change to the scope of food labeling preemption under NLEA. Specifically, the ACA replaced NLEA's general exception for local regulation of restaurants with an exception saving from preemption only local regulation of restaurants and other retail food establishments not covered by the ACA — *i.e*., those with fewer than 20 locations operating under the same name. Pub. L. No. 111-148, § 4205, 124 Stat at 576. The provision (as amended) now reads:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for nutrition labeling of food that is not identical to the requirement of section

> 343(q) of this title [*i.e.*, the ACA's retail food establishment requirements], except that this paragraph does not apply to food that is offered for sale in a restaurant or similar retail food establishment that is not part of a chain with 20 or more locations doing business under the same name (regardless of the type of ownership of the locations) and offering for sale substantially the same menu items.

21 U.S.C. § 343-1(a)(4).

**FDA's Implementation of Federal Menu Labeling Requirements**

32.     In December 2014, the FDA issued a final rule to implement the menu labeling requirements. *See* Food Labeling Final Rule, 79 Fed. Reg. 71,156 (Dec. 1, 2014). The final rule requires covered food service businesses to post on menus and menu boards the number of calories of every standard menu item adjacent to the item's name or price and to do so in the same or similar font size and with the same or similar color and contrasting background as the item or price. 21 C.F.R. § 101.11(b)(2)(i)(A). Covered businesses must also specify separately the calories from different "flavors or varieties" (such as a grilled cheese sandwich offered with cheddar or Swiss) and for each separate topping. *Id*. § 101.11(b)(2)(i)(A)(4).

33.     Menus and menu boards are also required to include a statement about daily calorie intake recommendations, *id*. § 101.11(b)(2)(i)(B). Covered business must also post calorie information for self-service foods and food on display, *id.* § 101.11(b)(2)(iii), and make available to customers information about the amount of fat (saturated and trans fat), cholesterol, sodium, carbohydrates, fiber, sugar and protein of standard menu items, *id*. § 101.11(b)(2)(ii). The rule requires covered establishments to have a "reasonable basis for its nutrient declarations," and provides detailed instructions for determining nutrient content, using sources such as nutrient databases, cookbooks, laboratory analysis, or other reasonable means. *Id*. § 101.11(c).

34. Recognizing the complexity of the rule for certain covered entities, and in light of extensive comments on the compliance burdens, the FDA set the effective date of the rule as December 1, 2015. *See* 79 Fed. Reg. at 71,241. The agency further stated that "[w]e expect covered establishments to come into compliance with the requirements of this rule by December 1, 2015, i.e., the same date as the effective date of this rule." *Id.*

**FDA's Postponement of Implementation and New York City's Response**

35. The new federal requirements imposed substantial new obligations and costs on the covered businesses, including grocery stores, convenience stores, and others. The final rule is approximately 7,000 words long, and the FDA estimated that it would affect approximately 300,000 businesses (around 2,000 chains) and cost those businesses $388.43 million in upfront expenses, and $55 million in annual recurring costs.

36. The federal regulations present special challenges for food establishments that permit customers a range of ingredient options. Restaurants, convenience stores, and other affected business owners have, not surprisingly, raised significant concerns about the cost and difficulties of complying with the onerous obligations of the FDA's final rule. In July 2015, the FDA, in response to concerns that restaurants and similar retail food establishments lacked "adequate time to fully implement the requirements of the rule," extended the compliance date by one year, to December 1, 2016. Extension of Compliance Date, 80 Fed. Reg. 39,675, 39,676 (July 10, 2015). The agency found that "allowing adequate time for covered establishments to fully implement the final rule's requirements . . . helps accomplish the primary objective of the final rule and is in the public interest." *Id.* The FDA did not change the effective date of the federal regulation; it remained December 1, 2015. *Id.* at 39,675.

37. In September 2015, New York City's Department of Health repealed and reenacted Regulation 81.50 to make its requirements "identical to the federal requirements." The

- 11 -

City's amended menu labeling requirements applied explicitly to both restaurants and "similar retail food establishments," which, for the first time, swept within the regulation's scope convenience stores, groceries or supermarkets that served restaurant-type food. *See* Regulation 81.50(a)(9). The City thus adopted both the federal calorie and related nutrient content disclosure requirements as its own. "In order to allow covered establishments to benefit from the additional time allowed by the FDA for compliance," the Department set Regulation 81.50's effective date as December 1, 2016, the same as the FDA's compliance deadline. The Department noted that "[r]estaurant-like establishments, which are not yet required to provide calorie information, will benefit from the FDA's guidance and this additional time as they plan to come into compliance."

**Congress's Further Delay of the Compliance Date**

38. As the federal compliance deadline drew nearer, concerns regarding the burdens of compliance and the lack of clarity from the agency prompted Congress to extend the deadline yet again. In December 2015, Congress passed and President Obama signed into law the Consolidated Appropriations Act, which prohibited federal funds from being used to implement the menu labeling requirements until one year following the publication of certain additional guidance from the FDA. Pub. L. 114-113, § 747, 129 Stat. 2242, 2282 (2015). The FDA published that guidance in May 2016, and stated that the rule would be enforced starting May 5, 2017. Guidance for Industry, 81 Fed. Reg. 27,067, 27,068 (May 5, 2016). Because it did not formally change the compliance date at that time, the FDA subsequently published a rule that confirmed and clarified that the compliance date was also May 5, 2017. *See* Extension of Compliance Date, 81 Fed. Reg. 96,364, 96,365 (Dec. 30, 2016).

39. The FDA's additional guidance did not resolve the ongoing industry concerns. In April 2017, NACS and the National Grocers Association ("NGA") filed a citizen's petition asking the FDA to pause and reconsider its final rule. The petition requested the stay and reevaluation of the final rule because of the confusion it had created and because of the significant costs of compliance on non-restaurant retailers. NACS and the NGA pointed out that the FDA staff could not provide clarification on basic questions, such as the distinction between a menu (which would require calorie data) and an advertisement or marketing piece (which would not) or how to "provide calorie counts for fried chicken, given that chickens (and their various parts) come in different sizes." Citing the "impossibility of compliance for many businesses," NACS and the NGA requested a further delay of implementation of the final rule.

**FDA's Further Postponement of Implementation**

40. On May 4, 2017, the FDA announced a further postponement of the compliance date to May 7, 2018. Extension of Compliance Date, 82 Fed. Reg. 20,825, 20,827 (May 4, 2017). The postponement was based on "continued, fundamental questions and concerns with the final rule," including that "[r]etailers with many different and diverse business models have raised concerns about how the rule lacks flexibility to permit them to provide meaningful nutrition information to consumers given their type of business and different operations." *Id*. The FDA noted that there remained many "complex" and unanswered questions about, for example, "calorie disclosure signage for self-service foods, including buffets and grab-and-go foods" and about how to distinguish menus from advertisements. *Id*. Accordingly, additional time was necessary to "consider what opportunities there may be to address these fundamental and complex questions and reduce the cost and enhance the flexibility of these requirements." *Id*. The FDA concluded that "it would not make sense" to require covered establishments "to come

into compliance with the rule (for which compliance is not yet required), as well as incur additional ongoing costs to maintain or update compliance, when these requirements may change as a result of our reconsideration of the rule." *Id.*

41. The FDA subsequently responded to the petition for reconsideration filed by NACS and the NGA, stating that it had not yet reached a decision on the merits of the petition, but noting that it had extended the compliance date to May 7, 2018, and inviting petitioners to file comments in that rulemaking proceeding.

**New York Moves Ahead With Its Menu Labeling Requirements**

42. On May 18, 2017, New York City Mayor Bill de Blasio announced that the City would begin enforcing Regulation 81.50, notwithstanding the FDA's year-long postponement of the parallel federal rules. The City's regulation thus put into effect immediately menu labeling requirements applicable to food service chains (including convenience stores) with 15 or more locations nationwide. The Department of Health stated that it would "start enforcement by educating chain food service establishments" immediately, and that it will begin issuing citations and fines for noncompliance on August 21, 2017.

**New York City's Premature Implementation of**
**Federal Menu Labeling Standards Will Harm Plaintiffs**

43. Plaintiffs and their members face the risk of irreparable harm in at least two ways: (i) they face enormous and ultimately unrecoverable costs to comply with a regulatory regime now that is likely to change by May 2018, and (ii) they face fines, business disruption and other harms from having to comply with regulatory rules that are so unworkable that the FDA saw fit to delay their implementation.

44. Absent relief from this Court, Plaintiffs and their members will be forced to incur substantial costs — as the FDA has already recognized — to comply with Regulation 81.50,

including nutritional analysis for existing food items, and for new food items as they are offered. Based on the experience of its members, plaintiff FMI estimates this analysis to cost up to $1,000 per item, which will impose "staggering" costs on establishments that wish to offer a range of options, as in a salad bar or hot food bar. In addition, plaintiffs' members will have to incur substantial costs for:

- updating menu boards and signs;
- training and recordkeeping;
- legal review to ensure full compliance;
- purchasing and programming new scales that can produce nutrition information for "grab-and-go" items; and
- printing the detailed "written nutritional information" that must be available "on the premises" for customers, *see* Regulation 81.50(e).

45. These costs will be particularly burdensome for establishments that operate only one or a few outlets as franchisees of companies, such as individual 7-Eleven stores, or gas stations (*e.g.*, Sunoco, BP and Mobil) operating with convenience stores. Regulation 81.50 covers food service establishments with 15 or more locations "doing business under the same name and offering for sale substantially the same menu items," *see* Regulation 81.50(a)(2), and so will apply even if the ownership among the stores is completely separate and diffuse. The result is that many true small businesses will have to build an elaborate compliance apparatus as if they were national chains.

46. These losses are irreparable because, even if the Court ultimately grants the declaratory relief sought in this lawsuit, the City's sovereign immunity will prevent any recovery after the fact. In addition, absent relief from this Court, regulated establishments will also be forced to navigate the significant and "complex" open questions that have led the FDA to delay implementation of its rules, 82 Fed. Reg. at 20,825, while the parallel New York City rules —

with the same "complex" issues — are enforced in isolation.  This will place the establishments at the risk of stiff fines (and the attendant reputational harm) or having to change their business models or food offerings to steer clear of potential violations.  Worse, businesses with multistate operations will effectively have to deal with these problems on a national scale, simply by virtue of having a presence in New York City.

47. There are multiple examples of these types of problems, including the following:

- Supermarket chains that offer "build-your-own" foods (such as salad bars, soup bars, or hot bar areas) will be required to discern and disclose the calorie counts of huge volumes of food types and combinations, or else abandon those offerings.

- Calorie information for self-service food must be posted "either on a sign adjacent to and clearly associated with the corresponding food, or on a sign attached to a sneeze guard above the food item," *see* Regulation 81.50(b)(5), and so a grocery store that switches out the various serving salad or hot bar bins throughout the day (such as for breakfast, lunch and dinner, as is quite common), will have to find a way to constantly rotate the signage on each bin to match the food item, or, otherwise, create an enormous sign visible from the salad bar with every possible food item listed.

- Because calories must be posted for any food items regularly offered at covered stores, the rule will be particularly challenging for supermarkets and other food establishments that offer specialty items tailored to the particular geographic region (such as locally sourced bagels in New York) or that otherwise choose to offer fresh or innovative items that are not part of their permanent offerings. Those establishments will be required to either make separate calorie tabulations in those instances or, perhaps more likely, choose to forego offering specialty or innovative items.

- Convenience stores, which often have a small footprint, will have a difficult time complying with the law's requirement that information be posted "on a sign adjacent to and clearly associated with the corresponding food." *See* Regulation 81.50(b)(5).

- The lack of clarity as to the definition of a "menu," *see* Regulation 81.50(b)(7), may require Plaintiffs' members to post calorie information on promotional signage, which can be particularly challenging for convenience stores or other establishments with a small footprint.

48. As discussed, the FDA has committed to consider these and other issues between now and May 2018, but New York City is apparently content to foist these problems onto chains

and brands that have at least one New York City outpost. In other words, New York's regulation will effectively govern calorie count obligations and displays *nationally*, and in a manner that the FDA considered to be so problematic that more time was warranted to make revisions. Plaintiffs' members should not be forced to alter their business models, or be marked as lawbreakers, because of New York City's ill-considered decision to jump ahead of the national regulatory regime.

### FIRST CAUSE OF ACTION — FEDERAL PREEMPTION

49. The Supremacy Clause of the U.S. Constitution states that the "Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const., art. VI. Federal courts have long recognized a cause of action in equity to prohibit the enforcement of state and local law that runs afoul of the Supremacy Clause. *See Friends of E. Hampton Airport*, 841 F.3d at 144; *see also Ex parte Young*, 209 U.S. 123, 155-63 (1908).

50. *Express Preemption.* Federal law explicitly bars state and local governments from adopting food labeling requirements that are "not identical to" the federal requirements under 21 U.S.C. § 343(q). 21 U.S.C. § 343-1(a)(4). For these purposes, a state or local rule or regulation is "not identical to" 21 U.S.C. § 343(q) if it imposes requirements that "[a]re not imposed by or contained in" or that "[d]iffer from" 21 U.S.C. § 343(q) or "any implementing regulation." 21 C.F.R. § 100.1(c)(4).

51. New York City's Regulation 81.50 is not identical to the food labeling requirements of 21 U.S.C. § 343(q) and the FDA regulations adopted thereunder.

52. By requiring compliance a year in advance of the federal requirements, New York has imposed additional obligations beyond those required by the federal statute and its implementing regulations, subjecting Plaintiffs and their members to substantial fines for conduct permitted by federal law.

53. *Implied Preemption.* New York's premature implementation of Regulation 81.50 is also preempted under the doctrine of implied preemption. Preemption is implied where, among other things, state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (quotations omitted).

54. Premature implementation of New York City's Regulation 81.50 would frustrate the federal scheme of uniform national menu labeling requirements and thus stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

55. As a result of New York City's actions, national chains will have differing governing standards for their menus and signs in the intervening time before the federal rules are in effect. The upshot is that there will be one standard for New York City, and another for the rest of the country.

56. Regulation 81.50 is therefore preempted by 21 U.S.C. § 343-1(a)(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby demand:

1. a preliminary injunction against enforcement of Regulation 81.50;

2. a permanent injunction against enforcement of Regulation 81.50, until such time as the FDA requires compliance with federal menu labeling rules on which NY Reg. 81.50 is based;

3. a judicial declaration, under 28 U.S.C. § 2201, that New York City's enforcement of Regulation 81.50 is preempted by federal law; and

4. such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: New York, New York<br>July 14, 2017 | Respectfully submitted,<br><br>STEPTOE & JOHNSON LLP<br><br>By: */s/ Charles Michael*<br>Charles Michael<br>1114 Avenue of the Americas<br>New York, New York 10036<br>(212) 506-3900<br>cmichael@steptoe.com<br><br>*Counsel for NACS* |
| Shannen W. Coffin<br>Osvaldo Vazquez<br>STEPTOE & JOHNSON LLP<br>1330 Connecticut Avenue, NW<br>Washington DC 20036<br>*Pro Hac Vice Pending*<br><br>Angelo I. Amador<br>*Of Counsel for Restaurant Law Center*<br>RESTAURANT LAW CENTER<br>2055 L Street, N.W. Suite 700<br>Washington, D.C. 20036<br>(202) 331-5914<br>aamador@restaurant.org | |